**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

EDWARD SCANLON, IV

        Plaintiff

   v.

VALERIA LAWSON, *et al.*,

        Defendants

Civ. No. 16-4465 (RMB-JS)

**OPINION**

APPEARANCES:

KEVIN T. FLOOD, Esq.
181 Route 206
Hillsborough, NJ 08844
     On behalf of Plaintiff

MICHAEL EZRA VOMACKA, Esq.
New Jersey Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market St., P.O. Box 112
Trenton, NJ 08625
     On behalf of Defendants Valeria Lawson, Felix Mickens
     and William M. Burke

**BUMB**, United States District Judge

Plaintiff Edward Scanlon IV brought this action under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA") § 10:6-2; and the New Jersey Tort Claims Act ("NJTCA") § 59:1-1 *et seq.* As to Defendant William M. Burke, Plaintiff alleges he failed to monitor the Cumberland County Juvenile Detention Center for compliance with its Manual of Standards, leading to violations of Plaintiff's constitutional rights. This matter now comes before

the Court upon Defendants Felix Mickens, William M. Burke, and Valeria Lawson's Motion for Summary Judgment (collectively "the JJC Defendants") ("JJC Defs' Mot. for Summ. J.," ECF No. 119); Brief on Behalf of the Juvenile Justice Comm. Defs' Mot. for Summ. J. on Claims of Plaintiff Scanlon and Cross-Claims ("JJC Defs' Brief," ECF No. 119-2); JJC Defendants' Statement of Material Facts Not in Dispute ("JJC Defs' SOMF," ECF No. 119-3); Pl's Opposition to Summ. J. Motions ("Pl's Opp. Brief, ECF No. 130); Reply to SOMF by DAG Michael Vomacka ("Pl's Reply to SOMF," ECF No. 130-3); and Pl's Counter-statement of Material Facts (ECF No. 130-5); and JJC Def's Letter Brief in Further Support of Summ. J. ("JJC Defs' Reply Brief," ECF No. 140).

Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the motion for summary judgment on the briefs without oral argument. Plaintiff does not oppose summary judgment in favor of Valeria Lawson and Felix Mickens on all claims and does not oppose summary judgment in favor of William M. Burke on the New Jersey tort claims. (Pl's Opp. Brief, ECF No. 130 at 9.) Plaintiff opposes summary judgment on the Section 1983 and NJCRA claims against Burke. For the reasons set forth below, the JJC Defendants' motion for summary judgment is granted.

I. BACKGROUND

Plaintiff filed this action in the New Jersey Superior Court, Law Division, Cumberland County on March 29, 2016, alleging civil

rights violations under 42 U.S.C. § 1983; the New Jersey Civil Rights Act ("NJCRA"), § 10:6-2, and tort claims under the New Jersey law, N.J.S.A. §§ 59:1-1 *et seq.* (Compl., ECF NO. 1-1 at 8-18.) The defendants to the action were Valeria Lawson ("Lawson"),[1] Felix Mickens ("Mickens"), Robert Balicki ("Balicki"), Veronica Surrency ("Surrency"), Michael Baruzza ("Baruzza"), and John and/or Jane Does 1-45 (fictitious individuals) and ABC Corps. 1-45 (fictitious corporations). (Id. at 8.)



Defendants removed the action to this Court on July 22, 2016. (Notice of Removal, ECF No. 1.) On July 29, 2016, Gregory R. Bueno,

---

[1] Plaintiff sued "Valerie" Lawson and Lawson corrected her name to "Valeria" upon answering the complaint. (Answer, ECF No. 26 at 1.)

Deputy Attorney General of New Jersey, entered a Notice of Appearance on behalf of defendant Mickens. (Not. of Appearance, ECF No. 4.) On August 3, 2016, defendants Balicki, Surrency and Baruzza, represented by Patrick J. Madden, Esq., filed an answer to the original complaint, and a cross-claim for contribution and indemnification against defendants Lawson and Mickens. (Answer, ECF No. 6.)

On September 28, 2016, Plaintiff sought an order for release of records from the State of New Jersey, Department of Children and Families ("DCF"), and the Court granted the request, subject to *in camera review* prior to disclosure to Plaintiff. (Order, ECF No. 18.) On December 12, 2016, the Court entered a Discovery Consent Confidentiality Order. (Order, ECF No. 23.)

On December 22, 2016, Gregory R. Bueno, Deputy Attorney General, filed a Notice of Appearance and Waiver of Service on behalf of defendant Lawson, and filed an answer to the original complaint on January 9, 2017. (Notice of Appearance, ECF No. 24; Waiver of Service, ECF No. 25; Answer, ECF No. 26.) On May 9, 2017, the Court completed *in camera review* of discovery documents and sent the documents concerning the subject of the complaint to Plaintiff's counsel.[2] Plaintiff received several extensions of time

---

[2] The Court resent the documents to Plaintiff's counsel on May 25, 2017, after the correct address was provided. (Letter Order, ECF No. 37.)

to file a motion to amend the complaint, and filed a motion to amend the complaint on July 21, 2017, and a corrected motion on July 26, 2017. (ECF Nos. 39-44.)

The motion to amend was granted on October 20, 2017. (Order, ECF No. 56.) Plaintiff filed a redacted amended complaint on October 26, 2017 and later filed an unredacted amended complaint. (Am. Compl., ECF Nos. 58, 88.) The amended complaint added claims against William M. Burke ("Burke") Supervisor, Compliance Monitoring Unit, New Jersey Juvenile Justice System; Bobby Stubbs ("Stubbs") Senior Juvenile Detention Officer at CCJDC; David Fuentes ("Fuentes") Juvenile Detention Officer at CCJDC; Harold Cooper ("Cooper") Senior Juvenile Detention Officer at CCJDC; Wesley Jordan ("Jordan") Juvenile Detention Officer at CCJDC; and Carol Warren LPN ("Warren"), at CCJDC. (Am. Compl., ECF No. 88, ¶¶28-32.)

Burke, Lawson and Mickens, represented by Gregory R. Bueno, Deputy Attorney General, filed an answer to the amended complaint on December 26, 2017. (Answer, ECF No. 74.)[3] Jordan, represented by Justin R. White, Esq, filed an answer to the amended complaint on February 6, 2018. (Answer, ECF No. 84.) Warren and Fuentes, represented by Daniel E. Rybeck, Esq., entered an answer to the

---

[3] On October 10, 2018, Michael Vomacka, Deputy Attorney General, was substituted as counsel for defendants Lawson, Mickens and Burke. (Substitution of Attorney, ECF No. 101).

amended complaint with a cross-claim for contribution and/or indemnification by the remaining defendants on February 15, 2018. (Answer, ECF No. 85.) The JJC Defendants filed the present motion for summary judgment on August 15, 2019. (JJC Defs' Mot. for Summ. J.," ECF No. 119.)

## II. THE AMENDED COMPLAINT

Plaintiff was born on April 1, 1996, and was a minor at all relevant times alleged in the amended complaint. (Am. Compl., ECF No. 88, ¶19.) ████ ██ ██ ████ ████ ████ ████ ██

████████████████████████████████████████

████ ██ ███ ██████ ███████ ██ ██ █████ ████ ██ ████

██████ ██ ██ ██ █████████ ████ ████ ████████ █████ ▪

████ ██ ███ ██████ ██████ ██████ ██ ██ █████

████ ██ ███ ██ ████ ██ ████ ████ █████ ████

█████ ████ █████████ ████████████████████ ████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ ██ ████ ████ ██████ ████ ██ ███ ████ ████

_____

▪██████ ████ ████ ████████ ████ ████ ▪██ ████ ██ ████
█████████████ ████ ███████ ████ ████ ████ ██ ██ ██ █
████████████████████████████████████

Lawson, Mickens and Burke of the New Jersey JJC "were responsible for ensuring that the JJC complies with state and federal law." (Id., ¶¶21 22, 23.) Balicki, Warden of CCJDC and Baruzza, Division Head of CCJDC, are also named as defendants. (Id., ¶¶25-27.)

In Count One, Plaintiff alleges violations of substantive due process for excessive use of force, inhumane conditions, lack of health care and failure to protect from harm under 42 U.S.C. § 1983. (Id., ¶¶36-43.) Count Two of the amended complaint is for the same conduct in violation of the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2. (Id., ¶¶44-47.)

For the Count Three, Plaintiff alleges negligence under New Jersey state law. (Am. Compl., ¶¶48-51, ECF No. 88.) In Count Four, Plaintiff alleges

> Defendants' actions and failure(s) to act constituted a failure to act and/or discipline, which proximately caused a violation of plaintiffs' civil rights to procedural and substantive due process with violations are made actionable by the N.J.C.R.A.
>
> Defendants knew or should have known of the violation of plaintiffs' rights, and acted and failed to act so as to permit the violation of plaintiffs' rights intentionally and/or recklessly and with deliberate indifference.
>
> Defendants owed Plaintiff a duty of care under common law and under N.J.S.A. §2A:4A-21 and N.J.A.C. §§ 13:95-8.9, 13:101-1.1
>
> Defendants Breach[ed] Those Duties by their Acts and Omissions.
>
> Defendants' breach of duty was the proximate cause of Plaintiff's physical and psychological injuries.

(Id., ¶¶53-57.)

Count Five is for punitive damages under New Jersey law. (Id., ¶¶58-61.) Counts Six and Seven are for intentional and negligent infliction of emotional distress under New Jersey law. (Id., ¶¶62-69.) Count Eight is alleged against Jordan, Stubbs and Fuentes for excessive force in violation of the Fourth and Fourteenth Amendments. (Id., ¶¶70-72.) Counts Nine and Ten are alleged against Balicki, Surrency, Cooper, Baruzza, Burke, Lawson and Mickens for

supervisory liability of their subordinates' violations of Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983. (Am. Compl., ¶¶73-88, ECF No. 88.)

III. DISCUSSION

    A.  Summary Judgment Standard of Review

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). "A dispute is "genuine" if 'a reasonable jury could return a verdict for the nonmoving party,'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (quoting Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Id. (citing Anderson, 477 U.S. at 248).

The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there is a genuine issue for trial." Daubert, 861 F.3d at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986) (emphasis in Daubert)). "With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." <u>Conoshenti v.</u>

<u>Public Serv. Elec. & Gas</u>, 364 F.3d 135, 145-46 (3d Cir. 2004)

(quoting <u>Celotex</u>, 477 U.S. at 325).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>> (1) give an opportunity to properly support or address the fact;
>>
>> (2) consider the fact undisputed for purposes of the motion;
>>
>> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>>
>> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). The court's role is "'not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial,'" Baloga, 927 F.3d at 752 (quoting Anderson, 477 U.S. at 249)).

Plaintiff does not oppose summary judgment on the tort claims. (Pl's Brief, ECF No. 130 at 9.) Therefore, the Court need address only the § 1983 and NJCRA claims against Burke.

B.  Statute of Limitations

Burke contends that Plaintiff's claims brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act are subject to a two-year statute of limitations. (JJC Defs' Brief, ECF No. 119-2 at 15.) All of Plaintiff's claims accrued on April 1, 2014, when he reached the age of majority, eighteen. (Id.) The statute of limitations for Plaintiff's claims expired on April 1, 2016, two years after he reached the age of majority. (Id. at 17.) Burke asserts that Plaintiff's claims against him are barred by the applicable statute of limitations because they were filed after April 1, 2016. (Id. at 18.)

Plaintiff first sought to add Burke as a defendant by motion filed on July 21, 2017. (Id.) In his motion to amend, Plaintiff

noted that the amended complaint added new facts and six new defendants, including William M. Burke. (Id., citing Mot. to Amend, ECF No. 42.) Plaintiff's motion to amend was granted on October 20, 2017, and the amended complaint was filed on October 26, 2017. (Order, ECF No. 56; Am. Compl., ECF No. 58.) Thus, Plaintiff's claims against Burke were filed after the April 1, 2016 statute of limitations period. (JJC Defs' Brief," ECF No. 119-2 at 19.)

Plaintiff did not respond to Burke's statute of limitations defense. (Pl's Opp. Brief, ECF No. 130.) In reply, Burke notes that Plaintiff does not contend that his amended pleading should relate back to the original complaint, and even if so, the evidence does not support relation back. (Id. at 4-7.)

Burke states that Plaintiff did not provide him with notice of his claims until after the limitations period expired. (Id. at 6.) The amended complaint was filed October 26, 2017, and summons were only requested on November 6, 2017. (Id., citing ECF No. 58, 60.)

Further, Plaintiff's claims against Burke are grounded in the theory that he was unaware the county facility was failing to comply with portions of the Manual of Standards, or he was deliberately indifferent as to policies adopted in the Manual. (Reply Brief at 6-7, ECF No. 140.) Plaintiff's original complaint, however, does not contain this theory of liability against Burke. (Id. at 7.)

In his motion to amend, Plaintiff specifically noted that the amended complaint: "adds facts, 6 new defendants (William M. Burke (aka Bill Burke), Bobby Stubbs, David Fuentes, Harold Cooper, Wesley Jordon, Carol Warren), and 3 new causes of action; Section 1983 Excessive Force-Eighth Count, Section 1983 Supervisory Liability-Ninth Count, and Section 1983 Unlawful Policy, Custom, Practice, Inadequate Training-Tenth Count." (Am. Compl., at 8, ECF No. 88.) Burke contends that Plaintiff fails to provide any explanation for seeking to add claims against him in 2017 for conduct that occurred in 2011 and 2012. (Id.)

C.  Analysis

Plaintiff's federal claims are brought under 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides a remedy for violation of federal rights. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010). Such claims are characterized as personal injury claims, and state law provides the statute of limitations. Id. (citing Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989)). Under New Jersey law, personal injury torts are subject to a two-year statute of limitations. Id. (citing N.J.S.A. § 2A:14-2).[5] Claims under the

---

[5]  N.J.S.A. § 2A:14-2, provides, in pertinent part:

Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be

New Jersey Civil Rights Act are also subject to a two-year statute of limitations. <u>Lapolla v. County of Union</u>, 157 A.3d 458, 465 (N.J. Super. Ct. App. Div. 2017).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). A claim accrues "when the plaintiff knew or should have known of the injury upon which its action is based." <u>Kach v. Hose</u>, 589 F.3d 626, 634 (3d Cir. 2009) (quoting <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted)).

"The general rule is that state tolling principles also govern § 1983 claims." <u>Id.</u> at 639 (citing <u>Hardin v. Straub</u>, 490 U.S. 536, 539, (1989)); <u>Island Insteel Sys. v. Waters</u>, 296 F.3d 200, 210 n. 4 (3d Cir. 2002)). In New Jersey, the statute of limitations for personal injury claims is tolled until a minor reaches the age of majority, age eighteen. <u>See</u> N.J.S.A. § 2A:14-21; N.J.S.A. § 9:17B-1; <u>Standard v. Vas</u>, 652 A.2d 746, 749 (N.J. Super. Ct. App. Div. 1995) (confirming that the tolling period ends upon a claimant's eighteenth birthday).

Plaintiff was born on April 1, 1996. ██ ▆ ██ ▆ ███ ▆ ██ ▆ ██
███ ▆ ▆ ██ ▆ ▆ ██ ▆ ███ ▆ ██ ▆ ██ ▆ ██ ▆ ██ ██ ██ ███ ██ ██
███ ▆ ██ ▆ ███ Under New Jersey law, the statute of

--------

commenced within two years next after the cause of any such action shall have accrued…

limitations was "tolled" until he turned eighteen on April 1, 2014. Therefore, any action against Burke had to be filed by April 1, 2016. The amended complaint, adding Burke as a defendant based on additional new facts, was not filed until October 26, 2017.

### 1.   Relation back under FRCP 15(c)(1)(A)

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 541 (2010). Plaintiff did not argue that his claims against Burke relate back to his original complaint, filed on March 29, 2016. However, because Plaintiff opposes summary judgment in favor of Burke on the Section 1983 and NJCRA claims, the Court will address whether the amended complaint relates back to the original complaint for statute of limitations purposes.

An amendment can relate back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back, and the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. Rule Civ. P. 15(c)(1)(A),(B).

New Jersey Court Rule 4:26-4 applies to actions in which fictitious parties are named when the defendant's true name is unknown to the plaintiff. It provides:

> if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained.
>
> If, however, defendant acknowledges his or her true name by written appearance or orally in open court, the complaint may be amended without notice and affidavit. No final judgment shall be entered against a person designated by a fictitious name.

N.J. Ct. R. R. 4:26-4.

In the original complaint, the only reference to a defendant employed by the New Jersey JJC is "Defendants 'John and/or Jane Doe 1-5' member[s] of Juvenile Classification Committee, Juvenile Justice Commission, P.O. Box 1097, Trenton, NJ 08625-0107." (Compl., ¶17, ECF No. 1-1.) In the amended complaint, Plaintiff identifies Burke as a supervisor of the compliance monitoring unit, New Jersey JJC. (Am. Compl., ¶23, ECF No. 88.)

"The fictitious name designation [] must have appended to it an 'appropriate description sufficient to identify' the defendant." DeRienzo, 357 F.3d at 353 (quoting Rutkowski v. Liberty Mut. Ins. Co., 209 N.J.Super. 140, 506 A.2d 1302, 1306-07 (1986)).

"The purpose of providing a sufficient description under Rule 4:26-4 is two-fold: it gives notice of the cause of action while also helping to identify the unknown defendant. Descriptions which are too vague or broad fail to achieve these goals." Miles v. CCS Corp., No. A-5947-12T3, 2015 WL 5009883, at *6 (N.J. Super. Ct. App. Div. Aug. 18, 2015). The original complaint identified "John and Jane Doe" members of the Juvenile Classification Committee of the JJC without alleging what such persons did or failed to do. In any event, Burke was not a member of the Juvenile Classification Committee. The description was too vague to give notice or to help identify Burke as a defendant for purposes of Rule 4:26-4.

New Jersey also has a general relation back rule, New Jersey Court Rule 4:9-3.

> New Jersey's general relation back rule, provides that an amendment changing the party against whom a claim is asserted relates back to the date of the original complaint if: (1) it arose out of the same transaction or occurrence set forth in the original pleading; (2) the proposed defendant received notice of the institution of the action within the limitations period such that the party will not be prejudiced in maintaining a defense; and (3) the proposed defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her. Arroyo v. Pleasant Garden Apartments, 14 F.Supp.2d 696, 701 (D.N.J.1998) (citing Viviano v. CBS, Inc., 101 N.J. 538, 503 A.2d 296, 304 (1986)).

Monaco v. City of Camden, 366 F. App'x 330, 334 (3d Cir. 2010).

████████ Burke did not receive notice of the action within the limitations period. The claims against Burke were not added until the statute of limitations expired, and Burke was not notified until the amended complaint was served on him on November 20, 2017. (Aff. of Service, ECF No. 80.) Moreover, the original complaint did not misidentify a party that Burke should have known was brought against him. See <u>Otchy v. City of Elizabeth Bd. of Educ.</u>, 737 A.2d 1151, 1155 (N.J. Super. Ct. App. Div. Oct. 15, 1999) ("[a] misnomer occurs where the correct party is already before the court, but the name in the complaint is deficient in some respect.")  The amended complaint does not relate back to the original complaint under New Jersey Court Rule 4:9-3.

2.  <u>Relation back under FRCP 15(c)(1)(C)</u>

Under federal law, an amendment can relate back to the date of the original pleading when

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that
> the action would have been brought
> against it, but for a mistake
> concerning the proper party's
> identity.

Fed. R. Civ. P. 15(c)(1)(C). At the time the original pleading was
filed, Rule 4(m) provided 120 days to serve the summons and
complaint. (Fed. R. Civ. P. 4, effective December 1, 2015).

"Rule 15(c)(1)(C)(ii) asks what the prospective defendant
knew or should have known during the Rule 4(m) period, not what
the plaintiff knew or should have known at the time of filing her
original complaint." Krupski, 560 U.S. at 548. "The only question
under Rule 15(c)(1)(C)(ii) … is whether [the added party] knew or
should have known that, absent some mistake, the action would have
been brought against him." Krupski, 560 U.S. at 549. "The
reasonableness of the mistake is not itself at issue." Id.

> A prospective defendant who legitimately
> believed that the limitations period had
> passed without any attempt to sue him has a
> strong interest in repose. But repose would be
> a windfall for a prospective defendant who
> understood, or who should have understood,
> that he escaped suit during the limitations
> period only because the plaintiff
> misunderstood a crucial fact about his
> identity.
>
> ...
>
> When the original complaint and the
> plaintiff's conduct compel the conclusion that
> the failure to name the prospective defendant
> in the original complaint was the result of a
> fully informed decision as opposed to a

> mistake concerning the proper defendant's
> identity, the requirements of Rule
> 15(c)(1)(C)(ii) are not met.

Krupski, 560 U.S. at 550-52. Pursuant to the Third Circuit's decision in Varlack v. SWC Caribbean, Inc.,[6] "the plaintiff's lack of knowledge of a particular defendant's identity can be a mistake under Rule 15(c)(3)(B)." Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 201 (3d Cir. 2001). Notice to the newly named defendant may be imputed by sharing an attorney with an original defendant or by an identity of interest with an originally named defendant. Id. at 196-97.

Burke shares an attorney with Lawson and Mickens, who were timely served with the original complaint. However, because Burke was not a member of the JJC Classification Committee, the only JJC defendants identified in the original complaint by the fictitious names "John and Jane Doe," there was nothing to put Burke on notice that he would have been named a defendant but for Plaintiff's inability to discover his name. Therefore, Plaintiff is not entitled to relation back under Rule 15(c)(1)(C). For the sake of completeness, in the alternative, the Court will address the merits of Plaintiff's claims against Burke.

C.    Alternatively, Burke Is Entitled to Summary Judgment on the Merits of Plaintiff's Section 1983 and NJCRA Claims

1.    Supervisory Liability

---

[6] Varlack, 550 F.2d 171, 174 (3d Cir. 977).

████ ██████ ████ ████ ████ ██ ████ ██ ████

████ ████ ████ ████ ████ ██ ████ ██ ████ █

████████████████████████████████████████

████████████████████████████████████████

██ ██████ ██████ ████ ████ ██████████ and supervisory

liability for such violations. ████████████████████

████ ██████ ████ ████ ██████████ ██ ████ ████

██ ██ ██ ██ ██ ██ ██ ██ ██ ██████ Therefore,

his claims arise under the Fourteenth Amendment. See <u>A.M. ex rel.</u>
<u>J.M.K. v. Luzerne County Juvenile Detention Center</u>, 372 F.3d 572,
584 (3d. Cir. 2004.) A juvenile detainee has a liberty interest in
his personal security and well-being. <u>Id.</u> at 579 (citing <u>Youngberg</u>
<u>v. Romeo</u>, 457 U.S. 307, 315-19 (1982)).

In 2009, the Supreme Court held that state officials are
liable only for their own unconstitutional actions, not for those
of their subordinates. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).
The Third Circuit considered whether <u>Iqbal</u> abolished § 1983
supervisory liability in its entirety and decided that it did not.
<u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 319 (3d Cir. 2014),
<u>cert. granted, judgment rev'd sub nom.</u> <u>Taylor v. Barkes</u>, 135 S.
Ct. 2042 (2015).

In the Third Circuit, "there are two theories of supervisory
liability, one under which supervisors can be liable if they
established and maintained a policy, practice or custom which

directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010). A plaintiff may establish a claim based on knowledge and acquiescence if the supervisor knew about a practice that caused a constitutional violation, had authority to change the practice, but chose not to. Parkell v. Danberg, 833 F.3d 313, 331 (3d Cir. 2016).

"[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Parkell, 833 F.3d at 331 (quoting Chavarriaga v. New Jersey Dept. of Corrections, 806 F.3d 210, 223 3d Cir. 2015.) An official is not "'enforcing,' 'maintaining,' or 'acquiescing in' a policy merely because the official passively permits his subordinates to implement a policy that was set by someone else and is beyond the official's authority to change." Id.

To establish supervisory liability for violation of a plaintiff's constitutional rights based on a practice or custom, a plaintiff may rely on evidence showing the supervisor "tolerated past or ongoing misbehavior." Argueta v. U.S. Immigration & Customs

Enf't, 643 F.3d 60, 72 (3d Cir. 2011) (quoting Baker v. Monroe Township, 50 F.3d 1186, 1191 n. 3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724–25 (3d Cir. 1989)). Typically, a plaintiff must show "a prior incident or incidents of misconduct by a specific employee or group of employees, specific notice of such misconduct to their superiors, and then continued instances of misconduct by the same employee or employees." Id. at 74; see Wright v. City of Philadelphia, 685 F. App'x 142, 147 (3d Cir.), cert. denied sub nom. Wright v. City of Philadelphia, Pa., 138 S. Ct. 360 (2017) ("a custom stems from policymakers' acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity") (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). A supervisor's conduct occurring after the alleged constitutional violation cannot be shown to have caused the violation. Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh, 742 F. App'x 628, 634 (3d Cir. 2018).

Failure to supervise and failure to train are subcategories of policy or practice liability. Barkes, 766 F.3d at 316. There is a four-part test for determining whether a supervisor is liable under the Eighth Amendment based on a policy or practice:

> the plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of

> a constitutional violation; (2) the defendant-
> official was aware that the policy created an
> unreasonable risk; (3) the defendant was
> indifferent to that risk; and (4) the
> constitutional injury was caused by the
> failure to implement the supervisory practice
> or procedure.

Barkes, 766 F.3d at 317 (quoting Sample v. Diecks, 885 F.2d 1099,

1118 (3d Cir. 2014).

Similarly, to establish liability for failure to train,

> the plaintiff must show (1) municipal
> policymakers know that employees will confront
> a particular situation; (2) the situation
> involves a difficult choice or a history of
> employees mishandling; and (3) the wrong
> choice by an employee will frequently cause
> deprivation of constitutional rights.

Logan, 742 F. App'x at 632–33 (internal quotations omitted).

Culpability for a deprivation of constitutional rights is at its

most tenuous where a claim turns on a failure to train. Connick v.

Thompson, 563 U.S. 51, 61 (2011). When "policymakers are on actual

or constructive notice that a particular omission in their training

program causes [] employees to violate citizens' constitutional

rights, the [policymakers] may be deemed deliberately indifferent

if the policymakers choose to retain that program." Connick, 563

U.S. at 61 (quoting Bd. of County Com'rs of Bryan Cty, Okl., v.

Brown, 520 U.S. 397, 407 (1997)).

"A pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate

indifference for purposes of failure to train." Id. at 62 (quoting

Bryan Cty., 520 U.S. at 409. To prove causation on a failure to train theory of liability, the plaintiff must also show "'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989)).

In an extraordinary case, "a [] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. "Single-incident" liability may arise where the constitutional violation was the "obvious" consequence of failing to provide specific training. Id. at 63-64. To establish such a claim, frequency and predictability of a constitutional violation occurring absent training might reflect deliberate indifference to a plaintiff's constitutional rights. Id. at 64 (citing Bryan Cty., 520 U.S. at 409.)

2.    Undisputed Material Facts

Burke moves for summary judgment based on the following undisputed facts.[7] ███ ████ ████ ████ ██ █





The JJC is responsible for ensuring that Detention Centers follow the Manual of Standards for County Juvenile Detention Centers. (SOMF ¶13; Ex. E at 4-5, ECF No. 119-9.) The JJC assigned

---

Letter sent by Plaintiff did not make reference to the State or any office, department, division, bureau, board, commission or agency of the State[,]" Plaintiff replies "the Tort Claims notice did notice the Department of Risk Management, C/O Tort and Contract Unit (see first page of September 18, 2012 Letter to Department of Risk Management, attached to Vomacka Cert. as Exhibit J.") (Pl's Reply to JJC Defs' SOMF, ECF No. 130-3, ¶¶17, 59.)

two employees to make random and routine visits to detention centers to ensure that the Manual of Standards was being followed. (SOMF ¶14, ECF No. 119-3; Ex. E at 5-6, ECF No. 119-9; Ex. F at 6, ECF No. 119-10.)

Burke was a supervisor of the compliance monitoring unit for the JJC. (SOMF ¶32; Ex. I at 4-5, ECF No. 119-13.) Burke never met Plaintiff nor did he know who he was. (SOMF ¶33; Ex. H at 14:13-17, 18:11-14, ECF No. 119-12.) ████ ██████ ██ ██ ████████
█████████████ ████████ ███████████████████████████
█████ ██ ██ ████ ███ █████ ███ ████ ███ ████ ███ ████
████████████████████████████████████████████████████
████████████ Burke did not have knowledge of specific policies of juvenile facilities, and was not involved in the day-to-day operations of county juvenile detention centers. (SOMF ¶36; Ex. I at 11.)

In 2011 and 2012, Defendant Burke did not receive standard operating procedures for CCJDC. (SOMF ¶38; Ex. H at 98:10-15.)[8] In 2011 and 2012, Burke did not write, approve or reject CCJDC policies. (SOMF ¶¶38-39; Ex. H at 98:20-23.)

In opposition to summary judgment, Plaintiff offered the following evidence of Burke's liability. Burke worked for the

---

[8] The JJC Defs' Exhibit H, excerpts from Burke's deposition transcript, is missing page 98. Page 98 can be found in Plaintiff's Ex. HH, ECF No. 130-10 at 65.

juvenile monitoring unit of the New Jersey Department of Corrections and supervised the unit which did program evaluations of facilities. (Counter-statement of Material Facts ¶¶70, 71, 73, ECF No. 130-5; Exhibit HH at T7:1-17, T9:10-22, T21:18-21, ECF No. 130-10 at 38.) Burke's duties included performing program evaluations to ensure the detention centers were complying with the Manual of Standards and performing physical inspections. (Pl's Counter-statement of Material Facts, ¶74, ECF No. 130-5; Exhibit HH at T10:1-7, ECF No. 130-10 at 43.)

Compliance with the Manual of Standards included standards regarding the use of force. (Id., ¶75; Exhibit HH at T10:12-19.) Burke interviewed juveniles in juvenile detention facilities but he never met or interviewed Plaintiff. (Id., ¶¶76, 77; Exhibit HH at T12:14-17, T14:13-15.) If there was a violation of the Manual of Standards, Burke would submit it to the detention center, which would have to provide him an 'action plan' on how they were going to address those violations. (Id., ¶178; Exhibit HH at T19:14-21; T21:7-22:5.)

Burke conducted his annual review of the CCJDC in November or December of 2011, and noted in his report that the program was run well and there were no issues. (Id., ¶181; Exhibit HH at T27:7-20.) ██████ ████████ ██████████████ ██████████ ██████████████ █████ ████

████████████████████████████████████████████████████████████ ██

█████████ █████ █████████ █████ ████ █████████ █████ █████ ██████

████ ██ ██ ██ ██ ██ ██ ███ ████

████████████████████ According to Burke, there was no policy or procedure in place to determine if juveniles were being abused by the guards. (<u>Id.</u>, ¶182; Exhibit HH at T32:21-33:11.)

3. <u>Analysis</u>

Plaintiff alleges three underlying constitutional violations upon which he seeks to hold supervisors liable under § 1983; ██

████████████████████████████████████████

██ ██ ██ █ █ ██ ██ ██ ██ ██ ██
████ ██ ██ ██ ██ ██ ██ ██
████████████████████████████████
██████████████████████████ ██
██████████████████████████████████
██ ██ ██ ██ ██ ██ ██ ██
████ ██ ██ ████ ██ ██ ██ ██ ██
███████████████

Second, it is undisputed that Burke was not a policymaker nor did he enforce policies for the CCJDC. (JJC Defs' SOMF ¶¶38-39; Ex. H at 98:20-23.) ████████████████

████████ ██ ████ ██ ██ ██ ██████
████ ██ ████ ██ ██ ██ ██ ██
████████████████████████████████
██████████████████████████████
████ ██ ██ ██ █ ██ ██ ██

 Burke was not a policymaker who could be held liable under such theories of liability.[9]

 Plaintiff, however, did not submit any evidence that Burke was involved in the investigation. In any

---

[9] Plaintiff also submitted evidence of improper use of administrative lockdown (Pl's Counter-Statement of Material Facts ¶¶240-281, ECF No. 130-5); however, Plaintiff did not raise any such claims in his amended complaint and it is immaterial to this action.

event, evidence of misconduct post-dating an alleged constitutional violation cannot establish the proximate cause element of supervisory liability. <u>Logan</u>, 742 F. App'x at 634.

Without evidence of Burke's own misconduct causing the alleged constitutional violations, Plaintiff is instead asserting supervisory liability based on a subordinate's constitutional violations. The Supreme Court has clearly stated there is no such liability under Section 1983. <u>Iqbal</u>, 556 U.S. at 676 (2009). Therefore, Burke is entitled to summary judgment.

IV. CONCLUSION

For the reasons discussed above, the JJC Defendants' motion for summary judgment is granted and the claims against them are dismissed with prejudice.

An appropriate order follows.

Date:  January 15,2020

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**