<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| EDWARD SCANLON, IV<br><br>　　　　　Plaintiff<br>　　v.<br><br>VALERIE LAWSON, *et al.*,<br><br>　　　　　Defendants | Civ. No. 16-4465 (RMB-JS)<br><br>**OPINION**<br>(REDACTED) |

APPEARANCES:

KEVIN T. FLOOD, Esq.
181 Route 206
Hillsborough, NJ 08844
　　　　On behalf of Plaintiff

PATRICK JOSEPH MADDEN, Esq.
Madden & Madden, PA
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033
　　　　On behalf of Defendants Robert Balicki, Veronica
　　　　Surrency and Michael Baruzza

**BUMB,** United States District Judge

　　　This matter comes before the Court upon Defendants Robert Balicki, Veronica Surrency and Michael Baruzza's motion for summary judgment (Defs Balicki, Surrency and Baruzza's Mot. for Summ. J., ECF No. 115); Brief in Supp. of Summ. J. ("Defs' Brief, ECF No. 116); Statement of Material Facts in Supp. of Summ. J. ("Defs' SOMF," ECF No. 116-1); Plaintiff's Opposition to Summary

Judgment Motions ("Pl's Opp. Brief," ECF No. 130); Plaintiff's Reply to Statement of Material Facts in Support of Motion for Summary Judgment ("Pl's Reply to SOMF," ECF No. 130-2); Plaintiff's Counter-statement of Material Facts ("Pl's CSOMF," ECF No. 130-5); Reply Brief of Defs. Robert Balicki, Veronica Surrency and Michael Baruzza ("Defs' Reply Brief," ECF No. 143); and Defs. Veronica Surrency, Robert Balicki and Michael Baruzza's Response to Pl's Counter-statement of Material Facts ("Resp. to Pl's CSOMF," ECF No. 143-2.)

Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the motion for summary judgment on the briefs without oral argument.

I.   BACKGROUND

Plaintiff filed this action in the New Jersey Superior Court, Law Division, Cumberland County on March 29, 2016, alleging civil rights violations under 42 U.S.C. § 1983; the New Jersey Civil Rights Act ("NJCRA"), § 10:6-2, and tort claims under the New Jersey law, N.J.S.A. §§ 59:1-1 *et seq.* (Compl., ECF NO. 1-1 at 8-18.) The defendants to the original complaint were Valeria Lawson ("Lawson,")[1] Felix Mickens ("Mickens"), Robert Balicki ("Balicki"), Veronica Surrency ("Surrency"), Michael Baruzza

---

[1] Plaintiff sued "Valerie" Lawson and Lawson corrected her name to "Valeria" upon answering the complaint. (Answer, ECF No. 26 at 1.)

("Baruzza"), and John and/or Jane Does 1-45 (fictitious individuals) and ABC Corps. 1-45 (fictitious corporations). (Compl., ECF No. 1-1 at 8.) The action arose out of incidents alleged to have occurred at the Cumberland County Juvenile Detention Center ("CCJDC") in March 2012. (Id.) Plaintiff alleged



(Id., ¶3.) Plaintiff also alleged ████████████████████████
████████████████ and generally that he was subject to
████████████████████████████████████████████████████████
████████████ (Id. at 11-10, ¶¶2, 14, 26.)

Defendants removed the action to this Court on July 22, 2016. (Notice of Removal, ECF No. 1.) On August 3, 2016, Balicki, Surrency and Baruzza, represented by Patrick J. Madden, Esq., filed an answer to the original complaint, and a cross-claim for contribution and indemnification against Lawson and Mickens. (Answer, ECF No. 6.) Plaintiff filed a motion to amend the complaint on July 26, 2017. (ECF No. 44.)

The motion to amend was granted on October 20, 2017. (Order, ECF No. 56.) Plaintiff filed a redacted amended complaint on October 26, 2017, and later filed an unredacted amended complaint. (Am. Compl., ECF Nos. 58, 88.) The amended complaint added claims

against William M. Burke ("Burke") Supervisor, Compliance Monitoring Unit, New Jersey Juvenile Justice System; Bobby Stubbs ("Stubbs") Senior Juvenile Detention Officer at CCJDC; David Fuentes ("Fuentes") Juvenile Detention Officer at CCJDC; Harold Cooper ("Cooper") Senior Juvenile Detention Officer at CCJDC; Wesley Jordan ("Jordan" or "Officer Jordan") Juvenile Detention Officer at CCJDC; and Carol Warren LPN ("Warren" or "Nurse Warren"), at CCJDC. (Am. Compl., ECF No. 88, ¶¶28-32.) Balicki, Baruzza and Surrency filed the present motion for summary judgment on August 15, 2019. (Defs' Mot. for Summ. J., ECF No. 115.)

## II.  THE AMENDED COMPLAINT

Plaintiff was born on April 1, 1996, and was a minor at all relevant times alleged in the amended complaint. (Am. Compl., ECF No. 88, ¶19.) ███████████████████████████████████████ ███████████████████████████████████████████ (Id., ¶20.) █████████████████████████████████████ (Am. Id., ¶1.)[2] ███████████████████████████████████

████████████████████████████████████████████

---

[2] ██████████████████████████████████████████████████
████████████ (Pl's CSOMF, ¶¶11-12, ECF No. 130-5; Ex. M, ECF No. 130-8 at 100-101.)

████████████████████████████████████████

██████████████ (Am. Compl., ¶¶2, 3, ECF No. 88.)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (Id., ¶¶4, 28, 29, 31.) ████████████

████████████████████████████████████████

██████████████████████████████████ (Id., ¶¶4-5.) Jordan received a notice to appear in court regarding the incident. (Id., ¶6.) Jordan asked Surrency, Division Head at CCJDC, and Senior Juvenile Detention Officer Cooper whether there was a "No Contact Order" in place for Plaintiff, and they told him "no." (Id., ¶¶6, 26, 30.)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (Id., ¶¶7, 32.) ██████████

████████████████████████████████████████

(Id., ¶9.)

Plaintiff alleges Lawson, Mickens and Burke of the New Jersey JJC "were responsible for ensuring that the JJC complies with state and federal law." (Id., ¶¶21 22, 23.) Balicki, Warden of CCJDC,

and Baruzza, Division Head of CCJDC, are also named as defendants. (Am. Compl., ¶¶25-27, ECF No. 88.)

In Count One, Plaintiff alleges violations of substantive due process for excessive use of force, inhumane conditions, lack of health care and failure to protect from harm under 42 U.S.C. § 1983. (Id., ¶¶36-43.) Count Two of the amended complaint is for the same conduct in violation of the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2. (Id., ¶¶44-47.)

In Count Three, Plaintiff alleges negligence under New Jersey state law. (Id., ¶¶48-51.) In Count Four, Plaintiff alleges

> Defendants' actions and failure(s) to act constituted a failure to act and/or discipline, which proximately caused a violation of plaintiffs' civil rights to procedural and substantive due process which violations are made actionable by the N.J.C.R.A.
>
> Defendants knew or should have known of the violation of plaintiff's rights, and acted and failed to act so as to permit the violation of plaintiff's rights intentionally and/or recklessly and with deliberate indifference.

(Id., ¶¶53, 54.) Count Five is for punitive damages under New Jersey law. (Id., ¶¶58-61.) Counts Six and Seven are for intentional and negligent infliction of emotional distress under New Jersey law. (Id., ¶¶62-69.) Count Eight is alleged against Jordan, Stubbs and Fuentes for excessive force in violation of the Fourth and Fourteenth Amendments. (Id., ¶¶70-72.) Counts Nine and Ten are alleged against Balicki, Surrency, Cooper, Baruzza, Burke,

Lawson and Mickens for supervisory liability of their subordinates' violations of Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983. (Am. Compl., ¶¶73-88, ECF No. 88.)

III. DISCUSSION

    A.  <u>Summary of Arguments</u>

As an initial matter, Plaintiff does not oppose summary judgment in favor of Baruzza on all claims. (Pl's Opp. Brief, ECF No. 130 at 9.) Further, Plaintiff does not oppose summary judgment on the tort claims in favor of Balicki and Surrency. (<u>Id.</u>) Therefore, the Court need address only the Section 1983 and NJCRA claims against Balicki and Surrency.

The NJCRA, N.J.S.A. 10:6-2(c), was modeled on 42 U.S.C. § 1983, and courts have repeatedly construed NJCRA claims as nearly identical to § 1983, using § 1983 jurisprudence as guidance for the analogous NJCRA claims. <u>See</u> <u>Trafton v. City of Woodbury</u>, 799 F.Supp.2d 417, 443-44 (D.N.J. June 29, 2011) (collecting cases)). Because the parties have not identified any differences between the § 1983 and NJCRA claims, the Court will address the claims together, guided by § 1983 jurisprudence.

Defendants assert there is nothing in the record that shows that any of the defendants directly participated in violating Plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in their subordinates' violations. (Defs' Brief, ECF No. 116 at 11.)

Therefore, Defendants can only be liable if Plaintiff can establish that they established a policy, practice or custom which directly caused the constitutional harm to plaintiff. (Id. at 10-11.) Balicki, the warden, and Surrency, a division head, did not directly supervise Jordan and were quite removed in the chain of command. (Id. at 12 citing Defs' SOMF, ¶50; Ex. V, ECF No. 116-6 at 3-4.)

As to Plaintiff's policy claims, Defendants contend Plaintiff cannot show their deliberate ████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████ (Defs' Brief, ECF No. 116 at 13.) Defendants contends that evidence does not show a pattern of such abuses nor does it show that Defendants had knowledge of any such incident occurring. (Id. at 13-14.)

Moreover, Defendants anticipated that Plaintiff would argue they should have enacted policies ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████ (Id.) Instead, Defendants argue ███ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████ (Id.) ████████████████████████████████████ ███████████████████████████████████████████████████████

█████████████████████████████████████ (Defs'

Brief, ECF No. 116 at 14.)

     In  opposition,  Plaintiff  asserts  there  is  evidence  that

Balicki and Surrency were responsible for developing policies and

procedures  for  the  CCJDC.  (Pl's  Opp.  Brief,  ECF  No.  130  at  51.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ (Id. at 53.) Plaintiff asserts "there is

absolutely  no  evidence  that  Balicki  [and]  Surrency … did  anything

to  correct  the  numerous  issues  affecting  [Plaintiff.]"  (Id.)

     Plaintiff  also  contends  Surrency  and  Balicki  were

deliberately  indifferent  █████████████████████████████████

████████████████████████████████████████████████████

██████████████████ (Id. at 50.) In sum, Plaintiff argues there is

a  genuine  factual  dispute  as  to  whether  Surrency  and  Balicki  failed

to  establish  policies  ██████████████████████████████████

██████████████████████ (Id.)

     B.    Summary Judgment Standard of Review

     Summary  Judgment  is  proper  where  the  moving  party  "shows  that

there  is  no  genuine  dispute  as  to  any  material  fact,"  and  the

moving  party  is  entitled  to  judgment  as  a  matter  of  law.  Fed.  R.

Civ.  P.  56(a);  Daubert v. NRA Group, LLC,  861  F.3d  382,  388  (3d

Cir.  2017).  "A  dispute  is  "genuine"  if  'a  reasonable  jury  could

return a verdict for the nonmoving party,'" <u>Baloga v. Pittston Area Sch. Dist.</u>, 927 F.3d 742, 752 (3d Cir. 2019) (quoting <u>Santini v. Fuentes</u>, 795 F.3d 410, 416 (3d Cir. 2015) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law,'" <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248).

The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there *is* a genuine issue for trial." <u>Id.</u> at 391 (quoting <u>Celotex Corp. v. Catrett</u>, 447 U.S. 317, 324 (1986) (emphasis in <u>Daubert</u>)). "With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Conoshenti v. Public Serv. Elec. & Gas</u>, 364 F.3d 135, 145–46 (3d Cir. 2004) (quoting <u>Celotex</u>, 477 U.S. at 323).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do
> not establish the absence or presence of
> a genuine dispute, or that an adverse
> party cannot produce admissible evidence
> to support the fact.

Fed. R. Civ. P. 56(c)(1).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). The court's role is "'not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Baloga, 927 F.3d 742, 752 (3d Cir. 2019) (quoting Anderson, 477 U.S. at 249)).

C. ███████████████████████████████

Plaintiff brings his failure to supervise claims against Surrency and Balicki in their individual and official capacities.[3]

---

[3] A § 1983 claim against a municipal officer in his or her official capacity is treated like a claim against the municipality itself. Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 690 n. 55 (1978). "It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1951 (2018) (quoting Monell, 436 U.S. at 691)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citations omitted).

While it is true, that Balicki and Surrency were not final-policy makers for the Manual of Standards, the record contains evidence

Plaintiff alleged Defendants ████████████████████████████

████████████████████████████████████████████ (Pl's Opp.

Brief, ECF No. 130 at 24-25.)

A juvenile detainee has a Fourteenth Amendment liberty

interest in his personal security and well-being. A.M. ex rel.

J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572,

579 (3d Cir. 2004). To determine whether Defendants violated this

right, the Court must decide "'what level of conduct is egregious

enough to amount to a constitutional violation and ... whether

there is sufficient evidence that [the Defendants'] conduct rose

to that level.'" A.M. ex rel. J.M.K., 372 F.3d at 579 (quoting

Nicini v. Morra, 212 F.3d 798, 809 (3d Cir. 2000) (alterations in

A.M. ex rel. J.M.K.)) A substantive due process violation "may be

shown by conduct that 'shocks the conscience.'" Id. (quoting County

of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998)). The

deliberate indifference standard is employed to determine whether,

in the custodial setting of a juvenile detention center, the

defendants were deliberately indifferent to the plaintiff's

personal security and well-being. " A.M. ex rel. J.M.K., 372 F.3d

at 579. Whether the conduct of the defendants "shocks the

conscience" depends on the circumstances of any given case. Id.

    1.   Standard for Supervisory Liability

---

that they had authority to make written policies and procedures
for the CCJDC.

In 2009, the Supreme Court held that state officials are liable in their individual capacities only for their own unconstitutional actions, not for those of their subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). The Third Circuit considered whether Iqbal abolished § 1983 supervisory liability in its entirety and decided that it did not. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 319 (3d Cir. 2014), cert. granted, judgment rev'd sub nom. Taylor v. Barkes, 135 S. Ct. 2042 (2015).

In the Third Circuit, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010). A plaintiff may establish a claim based on knowledge and acquiescence if the supervisor knew about a practice that caused a constitutional violation, had authority to change the practice, but chose not to. Parkell v. Danberg, 833 F.3d 313, 331 (3d Cir. 2016).

"[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the

constitutional violation." Parkell, 833 F.3d at 331 (quoting

Chavarriaga v. New Jersey Dept. of Corrections, 806 F.3d 210, 223

3d Cir. 2015.) When the supervisory liability is based on a

practice or custom, a plaintiff may rely on evidence showing the

supervisor "tolerated past or ongoing misbehavior." Argueta v.

U.S. Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir.

2011) (quoting Baker v. Monroe Township, 50 F.3d 1186, 1191 n. 3

(3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882

F.2d 720, 724-25 (3d Cir. 1989)).

For practice or custom liability, a plaintiff must typically

show "a prior incident or incidents of misconduct by a specific

employee or group of employees, specific notice of such misconduct

to their superiors, and then continued instances of misconduct by

the same employee or employees." Id. at 74; see Wright v. City of

Philadelphia, 685 F. App'x 142, 147 (3d Cir.), cert. denied sub

nom. Wright v. City of Philadelphia, Pa., 138 S. Ct. 360 (2017)

("a custom stems from policymakers' acquiescence in a longstanding

practice or custom which constitutes the 'standard operating

procedure' of the local governmental entity") (quoting Jett v.

Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). A supervisor's

conduct occurring after the alleged constitutional violation

cannot be shown to have caused the violation. Logan v. Bd. of Educ.

of Sch. Dist. of Pittsburgh, 742 F. App'x 628, 634 (3d Cir. 2018).

To establish liability on a claim that a supervisory defendant failed to create proper policy, the plaintiff must "(1) identify the specific supervisory practice or procedure that the supervisor has failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001).

> 2.   <u>Undisputed Material Facts</u>

Based on Plaintiff's deposition testimony, Defendants seek summary judgment on Plaintiff's claim of supervisory liability for ███████████████████████████████████████████ (Defs' Brief, ECF No. 116 at 15-16.) Plaintiff testified as follows:



(Defs' SOMF, ¶49.)

In opposition to summary judgment, Plaintiff argues the following facts create a disputed issue of material fact regarding

his claim that he was not provided his prescribed medications.
(Pl's Opp. Brief, ECF No. 130 at 26-27.) ████████████████
████████████████████████████████████ (Pl's CSOMF, ¶28,
ECF No. 130-5; Ex. NN, ECF No. 130-11 at 2.) ████████████

████████████████████████████████████████████████████████

████████████████ (Id., ¶30; Ex. NN, ECF No. 130-11 at 3████

████████████████████████████████████████████████████████

████████████████████████████████ (Id., ¶31; Ex. II at
T34:10-20, ECF No. 130-10 at 79.) ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ (Id., ¶¶36-37; Ex. A, ECF No.
130-8 at 2.)

    3.   <u>Analysis</u>

    The Court holds that Plaintiff has not established a genuine
issue of disputed fact that Defendants were deliberately
indifferent ████████████████████████████████████████████.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████ See <u>Ledcke v. Pennsylvania</u>

<u>Dep't of Corr.</u>, 655 F. App'x 886, 889 (3d Cir. 2016) (per curiam)

(district court properly dismissed supervisory liability claims

where plaintiff failed to demonstrate any supervisory defendants

were involved in alleged unconstitutional conduct or that they

directly caused constitutional harm by establishing a policy,

practice or custom).

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ Thus, Plaintiff has not shown that

Balicki and Surrency were deliberately indifferent to a

substantial risk ███████████████████████████████████████

████████████████ Accordingly, Balicki and Surrency, in their official

and individual capacities, are entitled to summary judgment on the

§ 1983 and NJCRA claims ████████████████████████████████

███████████████████████████

D.      ████████████████████████████████

In his amended complaint, Plaintiff alleged ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

(Pl's Opp. Brief, ECF No. 130 at 36-37.)

      1.    Elements of Fourteenth Amendment Excessive Force Claim

Plaintiff, as a detainee not yet adjudicated as delinquent, has a Fourteenth Amendment right to be free from excessive use of force. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (stating pretrial detainee has a right under the Due Process Clause to be free from excessive force that amounts to punishment). To state a Fourteenth Amendment excessive force claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473-74.

Objective reasonableness is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 2473 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and

18

practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Kingsley</u>, 135 S. Ct. at 2473-74 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 540 (1979)). Courts should consider the following factors:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

<u>Robinson v. Danberg</u>, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting <u>Kingsley</u>, 135 S. Ct. at 2473).

     2.   <u>Undisputed Material Facts</u>





Defendants do not dispute the following assertions made by Plaintiff in his Counter-statement of Material Facts, at least insofar as the deposition testimony speaks for itself. (Defs' Response to Pl's CSOMF, ECF No. 143-2.) ████████████

████████████████████████████████████████████████████

████████████ (Pl's CSOMF ¶228, ECF No. 130-5; Ex. EE at T70:6-17, ECF No. 130-9 at 204.) ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ (Pl's CSOMF ¶220; Ex. EE at T:74:3-75:6, ECF No. 130-9 at 205.) ████████████████████████

████████████████████████████████████████████████████

██████████ (Pl's COSMF ¶231, Ex. EE at T75:7-76:1, ECF No. 130-9 at 205.)

████████████████████████████████████████████████

████████████ (<u>Id.</u>, ¶232; Ex. EE at T77:3-19, ECF No. 130-9 at 206.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (<u>Id.</u>, ¶¶233-34, Ex. EE at T80:24-81-14, ECF No. 130-9 at 206-07.)

3.    <u>Analysis</u>

The exact basis for Plaintiff's excessive force claim is unclear. ████████████████████████████████████

████████████████████████████████████████████████████

21

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████.[4]

      Excessive force claims require courts to consider the
totality of the circumstances surrounding the use of force. ████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████

      █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

---

[4] If the Court has misconstrued or misunderstood Plaintiff's
claim, he may file a motion for reconsideration under Local
Civil Rule 7.1(i).

Based on the above undisputed material facts, the Court finds that ████████████████████████████████████████████████

████████████████████████████████████████ The Court recognizes that ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ At the end of this Court's analysis, this Court does not find a constitutional injury. As such, Balicki and Surrency are not liable in their individual or official capacities. See <u>Marable v. W. Pottsgrove Twp.</u>, 176 F. App'x 275, 283 (3d Cir. 2006) (municipality is not liable for officers' actions when officers did not inflict a constitutional injury).

E. <u>Failure to investigate other incidents, including those prior to March 2, 2012</u>

Plaintiff contends Surrency and Balicki failed to investigate whether there were incidents, prior to March 3, 2012, ████████████

████████████████████████████████████████████████

███████████████████████ ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ (Pl's CSOMF, ¶193, ECF No. 130-5 at 31; Exhibit II at T27:4-28:2, ECF No. 130-10 at 77.) ██████████████████████

████████████████████████████████████████████████

(Ex. EE at T127:17-24, ECF No. 130-9 at 218.) ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████ (Pl's CSOMF, ¶¶325-46; Ex. Q, p. 001-019, ECF

No. 130-8 at 143-162; Ex. P, p.001-002, ECF No. 130-8 at 117-18.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ (Defs' Reply Brief, ECF

No. 143 at 10.) ████████████████████████████████

███████████████████████████████████████████████

████████████████ (Defs' Reply Brief, ECF No. 143 at 10.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ (Ex. II at T26:12-

29:5.) ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ (Ex. Q, ECF No. 130-8 at 150.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████    ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ This case is

distinguishable from cases where plaintiffs demonstrated an

affirmative link between prior inadequate investigations into

complaints and the subsequent injuries suffered by the plaintiffs

when the misconduct continued. See Merman v. City of Camden, 824

F.Supp.2d 581, 593-94 (D.N.J. 2010) (collecting cases); cf. Huaman

v. Sirois, No. 13CV484 (DJS),2015 WL 5797005 at *11-13 (D. Conn.

Sept. 30, 2015) (32 excessive force complaints over 12-year span

without disciplinary action was inadequate to show a custom of

deliberate indifference to constitutional rights); see also Brown

v. New Hanover Twp. Police Dep't, 2008 WL 4306760, at *15 (E.D.

Pa. Sept. 22, 2008) ("Rather than reciting a number of complaints or offenses, a Plaintiff must show why those prior incidents deserved discipline and how the misconduct in those situations was similar to the present one.")

For these reasons, Plaintiff has not established facts sufficient for a jury to find a constitutional violation ████

████████████████████████████████████████████████

████████████████████████████

## F. Staffing Ratios and Failure to Train

Plaintiff contends Surrency and Balicki are liable for Plaintiff's constitutional injuries based on deficiencies in staffing and training. (Pl' Opp. Brief, ECF No. 130 at 42.)

Plaintiff submits that CCJDC employees were permitted to work before receiving any type of law enforcement training. (Pl's CSOMF ¶294, ECF No. 130-5 at 48; Ex. EE at T115:8-15; 118:22, ECF No. 130-9 at 215-16.) Officers at CCJDC received on the job training; then they went to the Sea Girt training academy. (Id., ¶295, Ex. EE at T116:21-117:3, ECF No. 130-9 at 215-16.) Surrency stated in her deposition, "[t]here is no special training that anyone receives before they're allowed to supervise a group of juveniles, except from what we go through with agency training on the job." (Id. ¶297; Ex. EE at T119:3-7, ECF No. 130-9 at 216.)

According to Balicki, he could not always get training for CCJDC officers at the academy, so he had to train them at CCJDC.

(Id., ¶301; Ex. FF at T59:20-60:5, ECF No. 130-10 at 18.) The JJC did not mandate specific training, only that officers were to have 24 hours of training. (Id., ¶311;; Ex. HH at T86:2-19, ECF No. 62.) The CCJDC was also understaffed at times, likely while Plaintiff was a resident. (Id., ¶319; Ex. JJ at T61:16-63:16, ECF No. 130-10 at 106.) The staffing ratios should have been eight juveniles to one guard during the day and sixteen juveniles to one guard at night. (Pl's SCOMF, ¶318, ECF No. 130-5; Ex. JJ at T61:16-63:16, ECF No. 130-10 at 106.)

Defendants contend there is no evidence that CCJDC was insufficiently staffed or that any juvenile detention officer was rebuked for failing to supervise the residents. (Defs' Reply Brief, ECF No. 143 at 13-14.) In response to Plaintiff's claim of inadequate training, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ (Id. at 14.) Defendants note that Jordan recalled reviewing the Manual of Standards, which mentions being vigilant to resident safety. (Id.) Additionally, Jordan recalled receiving training in 2010 entitled "Recognizing a Person with Mental Illness." (Id.) Jordan also testified ████████████████████████

████████████████████████████████ (Id.)

2.   Analysis of staffing ratio claim

Plaintiff has garnered evidence that CCJDC was understaffed at unspecific times and might have been understaffed at times when Plaintiff was committed to the CCJDC. Unlike A.M. ex rel. J.M.K.,[5] where there was evidence linking understaffing to specific instances of inability to adequately supervise residents, the evidence submitted by Plaintiff is too tenuous to establish that Balicki and Surrency were deliberately indifferent ███████ ████████████████████████████████████████████████████ ████████████████████████████████████ Thus, the Court turns to Plaintiff's allegation that his injuries were caused by Balicki and Surrency's failure to train staff.

2.  Failure to Train Standard of Law

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bryan Cty., 520 U.S. at 409.) To prove causation on a failure to train theory of liability, the plaintiff must also show "'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989)).

---

[5] 372 F.3d at 581.

In an extraordinary case, "a [] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. "Single-incident" liability may arise where the constitutional violation was the "obvious" consequence of failing to provide specific training. Id. at 63-64. To establish such a claim, frequency and predictability of a constitutional violation occurring absent training might reflect deliberate indifference to a plaintiff's constitutional rights. Id. at 64 (citing Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 409 (1997)).

4. Analysis of failure to train claim

Plaintiff has not shown ████████████████████████

████████████████████████████████████████████████████

████████████████ The only deficiency in training that Plaintiff identified was that employees were permitted to work before attending Sea Girt Academy, and received only 24 hours of on the job training. What is more, Jordan testified that the academy taught "rather be tried by 12 than carried by 6," meaning that it is "your life over their life [sic]." The policy for dealing with aggressive juveniles at the CCJDC, according to Jordan, was "[l]et the kids beat you up and they'll figure it out later." (Ex. KK at T16:15-21, ECF No. 130-10 at 113.)

Based on Jordan's testimony, and absent evidence showing a pattern of constitutional injuries resulting from a failure to employ a specific training program, Plaintiff has not established a causal link between a specific training deficiency and Jordan's alleged misconduct. Therefore, Balicki and Surrency, in their official and individual capacities, are entitled to summary judgment on the § 1983 and NJCRA claims for failure to train.

G. 

Plaintiff seeks to hold Balicki and Surrency liable for ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ (Pl's Opp. Brief, ECF No. 130-5 at 52; Pl's CSOMF, ¶321; Ex. EE at T105:24-108:17, ECF No. 130-9 at 213.) ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████ (<u>Id.</u>, ¶324; Ex. Q, ECF No. 130-8 at 156.)  ████████████████████████████████████████████████████ ████████████████████████████████████████████ (Defs' Reply Brief, ECF No. 143 at 14.) █████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ (<u>Id.</u>)

1.   <u>Undisputed Material Facts</u>



(Ex. QQ, ECF No. 130-11 at 18.)

(Ex. KK at T39:17-T42:13, ECF No. 130-10 at 119-20.)

(Ex. SS (video) at 25:25 to 27:07).

(Ex. EE at T108:3-110:11.)

(Ex. FF at T58:23-T59:16.)

(Ex. M, ECF No. 130-8 at 101.)

2.  <u>Analysis</u>

The Court holds that a reasonable jury could conclude, on
this record, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████

    ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[6] <u>See</u> 2003 formal reprimand of Wesley Jordan, Ex. U, ECF No. 130-
8 at 188.

[7] See Ex. M, ECF No. 130-8 at 14.

███████████████████████████████████████████

████████████ See <u>Heggenmiller v. Edna Mahan Correctional Institution</u> <u>for Women</u>, 128 F. App'x 240, 247 (3d Cir. 2005) (vigorously enforced no contact order was a reasonable step in protecting inmates from sexual contact by correctional officers.)

Defendants assert qualified immunity in their individual capacities. There are unknown facts concerning ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Unresolved issues of material fact preclude the grant of qualified immunity to Surrency and Balicki in their individual capacities. <u>See</u> <u>Barton v. Curtis</u>, 497 F.3d 331, 335 (3d Cir. 2007) (qualified immunity is question for a jury where relevant historical facts are disputed).

Furthermore, Plaintiff also sued Surrency and Balicki in their official capacities. (Am. Compl. ¶¶25-26, ECF No. 58.)

Although the Court agrees with Defendants that they are not final policymakers with respect to the Manual of Standards, the record shows that Balicki had final authority to make written policies and procedures specific to the CCJDC. See *supra* note 3.

In fact, in his deposition, Balicki says he was charged with updating CCJDC's outdated policies when he was hired in 2008 or 2009. (Ex. FF at T17:3-24:23, ECF No. 130-8 at 8.) He delegated that responsibility to Surrency. (Id.) According to Surrency, the policy changes to the 1989 CCJDC policies and procedures were never made because it was announced that CCJDC would close in 2015. (Ex. EE at T26:21-28:3, ECF No. 130-9 at 193.) Therefore, because Plaintiff sued Balicki and Surrency in their official capacities, which, legally, is the same as suing the county, and because Balicki had final policy-making authority with respect to the CCJDC, which he delegated to Surrency, the Monell claim may proceed to trial. See Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410 (1997) (single incident municipal liability may be found where a municipal actor disregarded a known or obvious consequence of his action). There is no qualified immunity for § 1983 Monell claims. Defendants are not entitled to summary judgment on the failure to protect claim ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

H. ██████████████████████████████

Plaintiff submits that Surrency and Balicki are liable for

████████████████████████████████████████████████████████

██████████████████████████ Defendants counter that Plaintiff did

not raise the issue ██████████████████████████ in his

amended complaint or answers to interrogatories, nor is there

mention of it in his deposition transcript. (Defs' Reply Brief,

ECF No. 143 at 12.) Furthermore, the Manual of Standards permitted

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(Pl's Ex. BB, Manual of Standards § 13:92-7.4, ECF No. 130-9 at

81.)

1.   Undisputed material facts

████████████████████████████████████████████████████████

████████████████████████████████ (Ex. EE, T84:12-17, ECF

No. 130-9 at 207.) █████████████████████████████████████

██████████████████████████████████████████████ (Ex.

W, ECF No. 130-8 at 194.) ███████████████████████████████

██████████████████████████████████████████ (Ex. EE,

T94:18-96:11, ECF No. 130-9 at 210.) ██████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ (Ex. FF, T32:13-

33:5, ECF No. 130-10 at 11-12.)

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ (Ex. HH, T50:7-22; T56:1-25, ECF No.

130-10 at 53-54.) ████████████████████████████████

████████████████████████████████████████████████

██████████████████ (Ex. BB, ECF No. 130-9 at 81███████████████

████████████████████████████████████████████████

████████████ (Ex. HH, T50:7-22; T56:1-25, ECF No. 130-10 at 53-54.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ (Ex. CC, ECF No 130-9 at 92-93.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ (Id.)

2.   Analysis

Defendants are correct that Plaintiff's first allegation of

███████████████████████████████████████████ was in his

opposition to Defendants' motion for summary judgment. The fact

that Plaintiff generally alleged "inhume conditions of

confinement" in the amended complaint does not make this claim

timely. The only "conditions" that Plaintiff described in the

amended complaint were █████████████████████████████████████

36

████████████████████████████████████████

████████████████████████████

Defendants were not timely notified of Plaintiff's claim ████

████████████████████████████████████████

████████ See <u>Jones v. Treece</u>, 774 F. App'x 65, 67 (3d Cir. 2019)
("a plaintiff generally 'may not amend his complaint through
arguments in his brief in opposition to a motion for summary
judgment'") (quoting <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781
(7th Cir. 1996)). The statute of limitations expired two days after
Plaintiff filed the original complaint on March 29, 2016. By the
time Plaintiff first raised his claim ████████████████████████
████████ in his opposition to summary judgment, filed on November
5, 2019, the statute of limitations had long expired, and it was
too late to add new claims to the amended complaint. Therefore,
Defendants are entitled to summary judgment on this claim.

    I.   ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (Pl's Opp. Brief, ECF No. 130 at
30-32.)

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████ (Pl's Opp.

Brief, ECF No. 130 at 27-30.) ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ (Id. at

35-36.)

Defendants maintain that Plaintiff did not show how these

alleged failures created an unreasonable risk of the injury he

sustained, ██████████████████████████████████████████████

█████████████████████████ (Defs' Reply Brief, ECF No. 143 at 7-8.)

Further, Defendants submit that there is nothing in the record

showing ██████████████████████████████████████████████

████████████ (Defs' Reply Brief, ECF No. 143 at 8.)

Defendants distinguish A.M. ex rel. J.M.K., 372 F.3d 572 (3d

Cir. 2004), where a juvenile was housed in a wing with other

juveniles who had previously assaulted him. (Id. at 9.) In that

case, the failure to review incident reports showing continuous

assaults on the plaintiff by other juveniles permitted the assaults

to continue. (Id. at 11-12.) ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Unlike A.M. ex

rel. J.M.K., ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ (Defs' Reply Brief, ECF

No. 143 at 11-12.)

1. <u>Undisputed Material Facts</u>

   a. ███████████████████

Plaintiff offers the expert report of Wayne A. Robbins. (Ex. MM, ECF No. 130-10 at 157-210.) Robbins opined, in relevant part:



(Ex. MM at ECF No. 130-10 at 161.)



(Ex. F, ECF No. 130-8 at 61.)

Warden Balicki was deposed concerning the placement of juvenile offenders in appropriate housing in CCJDC. (Ex. FF at T63:20-66-17, ECF No. 130-10 at 19-20.) Balicki knew that adult jails had intake classification procedures that took into account inmate offenses and disciplinary history, which were used to classify inmates as maximum, medium or minimum custody. (Id.) There was no such policy at CCJDC, housing was left to the discretion of the division head, Surrency, or shift commanders. (Id.)

Surrency was a division head at CCJDC during the relevant time period, and her supervisor was Warden Balicki. (Ex. EE at T14:8-15:6, ECF No. 130-9 at 190.) Her responsibilities included overseeing the daily operations of the facility, for all the departments. (Id. at T24:7-26:20, ECF No. 130-9 at 192-93.) She was responsible for protecting the welfare and safety of the juveniles in CCJDC. (Id.)

Surrency had authority to create policy. (Id.) Balicki did not work onsite at CCJDC, so she did not discuss issues with him unless she felt an investigation was necessary. (Id.) Surrency and Balicki did not discuss policies much because policies and procedures were already in place. (Id.)

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

████████████████████████████████████████

███████████████████████████████ (Ex. GG,
T11:12–14:5, ECF No. 130–10 at 27–28.) Placement of the juveniles
depended on their behavior within CCJDC. (Id. at T13:25–14:5.)

████████████████████████████████████████

██████████████████████████████████ (Ex.
KK, T:25:16–28:1, T31:4–19, ECF No. 130–10 at 97–98.) █████

████████████████████████████████████████

████████████████████████ (Id. at T34:16–38:12, ECF No.
130–10 at 99–100.)

        b.    ████████████████████████████

The CCJDC had an admissions process. (Ex. EE at T32:19–34:14,
ECF No. 130–9 at 194–95.) The only questions juveniles were asked
about mental health during admissions were whether they were
depressed, suicidal or used any alcohol or drugs. (Id.) Within 24-
hours of a juvenile's admission, medical staff would further assess
his or her physical and mental health. (Id.) The facility had many
juveniles with mental health issues. (Id.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ (Ex. EE at T29:20-31:19, ECF No. 130-9
at 194.) ████████████████████████████████████████

████████████████████████████████████████████ (<u>Id.</u> at T38:5-
39:5, ECF No. 130-9 at 196.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



2. <u>Analysis</u>

Plaintiff has not explained how these alleged policy failures caused his constitutional injury. Again, it bears repeating that the sole constitutional injury that Plaintiff alleges ███

████████████████████████████████████████████████

██████████████ they were first raised in Plaintiff's opposition to summary judgment, and it is too late to amend the complaint to bring claims separate from the constitutional injuries alleged in the amended complaint.

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

As set forth above, the Court has determined that Plaintiff failed to show a reasonably jury could conclude that ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ The Court, however, will address whether the alleged policy failures

████████████████████████████████████████████████

██████████████████████████████████

The Due Process right to safety of incarcerated juveniles encompasses the right to reasonable protection from the aggression of others. See Thomas S. ex rel. Brooks v. Flaherty, 699 F. Supp. 1178, 1200 (W.D.N.C. 1988), aff'd, 902 F.2d 250 (4th Cir.), cert. denied, 498 U.S. 951 (1990) (defining substantive due process rights of mentally disabled adults).

> Juveniles at [a] correctional facility should
> be screened and classified so that aggressive
> juveniles are identified and separated from
> more passive juveniles, with the level of
> restraint to be used for each juvenile based
> on some rational professional judgment as to
> legitimate safety and security needs; there
> should also be periodic review of initial
> placement to evaluate whether subsequent
> events demonstrate need for reclassification
> of juvenile security requirements.

Alexander S. By & Through Bowers v. Boyd, 876 F. Supp. 773 (D.S.C.

1995), as modified on denial of reh'g (Feb. 17, 1995).

Certainly, detention centers, whether adult or juvenile,

should have a classification system to identify violent and non-

violent persons for the purpose of protecting the safety of those

more vulnerable. ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████[8]

---

[8] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ They are not liable as supervisors under §
1983 and the NJCRA, however, unless they were *deliberately*
*indifferent* to a substantial risk ████████████████████████

██████████████████████████████ See <u>Brown</u>, 269 F.3d
at 215-16 (municipality not liable for officer who shot pet dog
where plaintiff failed to show an official policy endorsing such
conduct, a custom of condoning such conduct, and where no
reasonable jury could conclude the need for further training was

---

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████

so obvious that municipality was deliberately indifferent to such a risk.)

Plaintiff also asserts Surrency and Balicki should be held liable for ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

As with the lack of a classification policy, the record does not permit a reasonable jury ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Plaintiff cites to <u>A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center</u>, 372 F.3d 572 (3d Cir. 2004). In that case, the plaintiff was physically assaulted on numerous occasions by other juvenile residents in a juvenile detention center. <u>Id.</u> at 575-76. Although

the plaintiff was supposed to be kept away from the boys who had previously assaulted him, this directive was not always followed. Id. at 576. The incident reports involving the plaintiff in that case supported an inference that it was predictable the plaintiff would suffer recurrent harm at the hands of other residents.

In this case, ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████ See Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996) (municipality not liable for rape by a police officer because there was no patently obvious need to train officers not to commit rape and no evidence that failure to train caused the rape).

The standard for supervisory liability under § 1983 is high. Supervisors, without some type of personal involvement in the constitutional harm, are not liable for the misconduct of their employees. Iqbal, 556 U.S. at 676. Thus, the Court must grant summary judgment to Surrency and Balicki on Plaintiff's § 1983 and NJCRA claims in their individual and official capacities.

IV.  CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Defendants Balicki, Baruzza and Surrency's motion for summary judgment.

An appropriate order follows.

Date:  February 21, 2020

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**